**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 09-20945-CIV-SEITZ/GOODMAN**

ELDRICK BROWN,

      Plaintiff,

v.

REGINALD KINCHEN, ET AL.,

      Defendants.

_____/

<u>**REPORT AND RECOMMENDATIONS ON DEFENDANTS'**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>[1]

      This cause is before me on the Motion of Defendants, Reginald Kinchen, Dairon Williams, William Goins, Roberick Passmore, and William Cook, for Summary Judgment.[2] (DE# 57.)   For the reasons below, I respectfully recommend that the District Court **grant** Defendants' motion as to all of Brown's claims.[3]

---

[1]     As an initial matter, defense counsel did not sign the summary judgment motion. (DE# 57.)   In certain instances, this would be sufficient grounds for entry of an order striking Defendants' motion.   FED. R. CIV. P. 11.   This omission also violates the Southern District of Florida's CM/ECF Administrative Procedures § 3J(1).   Because this omission was not previously brought to Defendants' attention, and because I prefer to make recommendations on the merits of the motion, I do *not* recommend that the District Court strike Defendants' motion.   Nevertheless, I expect that defense counsel will in the future follow the rule and sign the pleadings, motions and other submissions filed with the Clerk of the Court.

[2]     The Clerk of the Court originally assigned this case to Magistrate Judge Patrick A. White for a ruling on all pre-trial, non-dispositive matters and for a report and recommendations on any dispositive matter pursuant to Administrative Order 2003-19.   (DE# 3.)   Magistrate Judge White subsequently transferred his referral to me pursuant to Administrative Order 2010-79.   (DE# 74.)

[3]     Although the Court's docket technically reflects that Brown also has a summary judgment motion pending, my review of this "motion" establishes that it is only a *pro se*

## I.      Background

Brown, who is currently incarcerated in state prison due to an unrelated conviction, filed this *pro se* civil rights action under 42 U.S.C. § 1983.  (DE# 1; DE# 31; DE# 76; Case No. 09-20936, DE# 68, p. 4.)  Even at this late stage of the litigation, the parties agree on very little concerning the facts surrounding Brown's Fourth Amendment claims that his home was illegally searched and that he was falsely arrested.  The only undisputed material facts can be stated as follows.

On July 28, 2006, Kinchen and Cook were driving through a residential Miami neighborhood when Kinchen spotted Brown standing in the yard of a duplex.  (DE# 31, p. 2; DE# 57, p. 8.)  Kinchen turned his car around and drove back towards the duplex where he and Cook made contact with Brown in the duplex's front yard.  (DE# 31, p. 2; DE# 57, p. 8.)  Sometime thereafter, Defendants Goins and Williams also arrived at the scene and Kinchen summoned a city code inspector to investigate whether the duplex's condition constituted a sanitary nuisance or otherwise should be condemned.  (DE# 31, p. 2; DE# 57-4, 57-5, 57-7, 57-8.)  The inspector and Kinchen searched inside the duplex while Cook searched the exterior of the property.  (DE# 31, p. 7; DE# 57-4, 57-5.)

Kinchen claims that, based upon his observations, he concluded Brown was maintaining a sanitary nuisance and had altered his electrical meter to steal electricity.  He arrested Brown for these offenses in the front yard.  (DE# 31, p. 7; DE# 57, p. 4.)  The parties agree that Defendants' search of the duplex and Brown's arrest were both made without a warrant.  (DE# 31; *see generally* DE# 57.)  The parties disagree as to the rest.

---

**response** to Defendants' motion and does not argue that summary judgment is appropriate in Brown's favor.  (DE# 62.)  Consequently, I have considered the so-called "motion" as a response to Defendants' motion and I recommend that if the District Court adopts my report and recommendations, then it simultaneously terminate that "motion."

### a. Plaintiff's Version of the Facts

Brown alleges that on July 28, 2006, he and a friend were at the duplex, cleaning up the yard and placing a blue tarp on the roof, as part of Brown's efforts to repair damage caused by Hurricane Wilma.  (DE# 1, p. 1; DE# 37, p. 2.)  Brown had just been released from a ten-month jail stay only two days earlier and was returning to the duplex for the first time.  Brown lived at the duplex immediately before serving that jail term and considered the duplex his home on this date.  (DE# 35, p. 5; DE# 57-1, p. 51-52.)

Brown claims that when Kinchen arrived at the property, Kinchen asked Brown what Brown was doing there.  (DE# 31, p. 2.)  Brown told Kinchen that Brown lived there and was cleaning up hurricane damage, whereupon Kinchen ordered him off the property and told him nobody was supposed to be there.  (*Id.* at p. 2.)  When Brown refused to leave, Kinchen said to Brown "oh yes! I have been waiting for you.  I'm closing this place down now get off the property" and "I'm taking you to jail."  (*Id.*)  Kinchen also at that time summoned Cook, Williams, Goins, Passmore, and the code inspector to assist him.  (*Id.*)[4]

Kinchen and one or more of the other officers proceeded to search inside the duplex while the remaining officers detained Brown and his friend and searched the duplex's yard and exterior.  (*See generally id.*)  The code inspector allegedly did not find any immediately actionable violations and before leaving actually offered to help Brown obtain assistance in

---

[4]     Kinchen and the other defendants who submitted affidavits on this issue essentially deny that these comments were made.  Specifically, Kinchen's affidavit states he never assembled the officers in a huddle to instruct them that he was going to "make up some charges to arrest Mr. Brown." (DE# 57-4, p. 2).  Cook confirms this version in his affidavit. (DE# 57-5, p. 2).  Williams and Goins also both say, in their affidavits that Kinchen did not consult with them "or indicate" that "he was going to arrest Mr. Brown."  (DE# 57-7, p. 2, 57-8, p. 2).

As discussed later in this report, this factual dispute over the comments are not "material" and therefore do not preclude summary judgment.

repairing the damaged roof.  (*Id.* at p. 3.)  According to Brown, the code inspector's reaction made Kinchen so upset that he told the other officers, "We are taking him to jail, I'm going to find something to put on him."  Brown contends that Defendants then arrested him for maintaining a sanitary nuisance and electrical theft even though they had no basis to believe that Brown committed either crime.  (*Id.*)

Brown alleges that Defendants, led by Kinchen, violated his Fourth Amendment right to be free from unreasonable search and seizure by illegally searching his home (i.e., the duplex) and falsely arresting him for stealing electricity and maintaining a sanitary nuisance.[5]  (*Id.* at p.

---

[5]        Brown also references as the basis for his amended complaint Article I, §§ 2 ("Basic rights"), 9 ("Due process"), & 23 ("Right of privacy") of the Florida Constitution.  However, and as assumed previously by Magistrate Judge White and the District Court when reviewing Brown's amended complaint upon Defendants' motion to dismiss, it is clear that Brown intended to rely upon the Florida Constitution Article I, § 12 ("Searches and seizures").  *See S.E.C. v. Elliot*, 953 F.2d 1560, 1582 (11th Cir. 1992) (directing courts to "provide pro se parties wide latitude when construing their pleadings and papers" and to "use common sense to determine what relief the party desires").  This case therefore is governed by **federal** court precedent on the Fourth Amendment to the United States Constitution.  *Johnston v. Tampa Sports Auth.*, 530 F.3d 1320, 1325 (11th Cir. 2008) ("As the text of the Florida Constitution's search and seizure provision explains, the Florida Constitution affords the same protections against unreasonable searches and seizures as the Fourth Amendment").  *See also e.g.*, *State v. Hester*, 618 So. 2d 1365, 1366 (Fla. 1993) (explaining that Florida's constitutional right of privacy does not expand protection against searches and seizures beyond that available in Article I, § 12 and the Fourth Amendment).

While it is clear that this is a Fourth Amendment case, Brown, a *pro se* litigant, has not spelled his claims out as clearly as would be found in a lawsuit prepared by an attorney.  As a result, Defendants appear to have some confusion about which specific Fourth Amendment claims Brown actually made in his amended complaint.  Defendants begin their summary judgment argument by analyzing why the Defendants' search of the front and back *yard* did not violate the Fourth Amendment.  (DE# 57, p. 8.)  However, it does not appear that Brown made that claim and, even if he had, it would not likely survive summary judgment.

Although Brown mentions the search of the front and back yard of the duplex in his amended complaint, as far as I am able to tell he only specifically complains about the lack of a warrant with regard to his arrest and the search of the duplex's interior.  (e.g., DE# 31, p. 6.)  Before this case was transferred to me, Magistrate Judge White entered a report and recommendations analyzing only claims for a warrantless home search and warrantless arrest.  (DE# 35, pp. 11-12.)  Moreover, District Judge Seitz's order adopting that report and

3.)  Brown also claims that the electrical theft charge was later dismissed, that the Court withheld

adjudication on the sanitary nuisance charge, and, more specifically, that he never pled guilty to

the sanitary nuisance charge.  (*Id.* at p. 3; DE# 66, p. 2.)

### b.  Defendants' Version of the Facts

According to Defendants, the events that day unfolded quite differently.  Defendants

claim that on the morning of Brown's arrest, a city administrator asked Kinchen to investigate a

narcotics and nuisance problem at the duplex.  (DE# 57-4.)  Based upon that request, Kinchen

---

recommendations on the earlier, previously-denied motions to dismiss concludes that "because Plaintiff alleges that no officer present at the scene obtained an arrest or search warrant prior to entering his home, effecting a search, and placing him under arrest, and because no officer intervened to prevent the warrantless search and arrest, Plaintiff states a claim for relief."  (DE# 39, pp. 1-2.)  It therefore appears that Brown is not asserting a claim for illegal search of the duplex's yard.  However, should the District Court determine that Brown has made such a claim, I respectfully recommend the District Court find that Defendants committed no constitutional violation when they searched his yard and grant Defendants' summary judgment motion on qualified immunity grounds for the yard search.

It is well established that "Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares."  *California v. Ciraolo*, 476 U.S. 207, 213 (1986).  Defendants have offered uncontroverted, competent evidence establishing that both the front and the backyard of the duplex were open to the completely unobstructed public view.  (Brown Dep., DE# 57-1, pp. 62-64 (explaining that his back and front yards were surrounded only by a chain link fence, that these yards could be seen from public roads, and that Brown saw Kinchen spot him in his yard while Kinchen drove down an adjacent street)).

In *Cowart v. Enrique*, 311 F. App'x 210, 214 (11th Cir. 2009), the Eleventh Circuit held that a homeowner had no reasonable Fourth Amendment expectation of privacy in a front yard surrounded by a three and a half feet tall wood fence that "hardly obscures a person's field of vision when standing outside" the front yard.  Even without Brown's admission that the front and back yards were both open to public view, a wood fence provides much *more* privacy than a chain link fence and therefore it would be clear that Brown had no constitutionally protected expectation of privacy in the front or back yard.  *See also United States v. Brown*, 510 F.3d 57, 65 (1st Cir. 2007) (holding that a driveway not visible from the public street but which defendant had taken no action to discourage public entry "was not an area coming under his home's umbrella of Fourth Amendment protection"); *Azevedo v. City of Fresno*, No. 1:09-CV-375 AWI DLB, 2010 WL 2353526, *9 (E.D. Cal. June 9, 2010) (finding no Fourth Amendment expectation of privacy where front yard was surrounded by wrought iron fence but no other steps had been taken to make yard private and inside of yard was "essentially open to public view").

and Cook drove to the duplex and upon arrival could "clearly see the yard and smell a foul odor" coming from the property. (*Id. See also* DE# 57, p. 8.)  Once Kinchen and Brown pulled up to the duplex, the condition of the electrical meter, which Brown allegedly rigged to provide him with free electricity, was visible from the street. (DE# 57, p. 9; DE# 57-4, 57-5.)

After briefly speaking with Brown, Kinchen and Cook walked around the property. (DE# 57-4, 57-5.)  During this walk, they concluded that he was using his backyard as a toilet (after discovering a feces-filled bathtub had attracted maggots and flies). (DE# 57-4, 57-5, 57-9.)  Brown allegedly told Kinchen and Cook at this point that all of the toilets inside the duplex were clogged and that he had not paid his electrical bill for months. (DE# 57-9.)  Moreover, according to Kinchen and Cook, they were able to determine that the interior of the unit was "completely destroyed" because the back door was open, there were no windows on the back bedroom and the roof was exposed. (DE# 57-4, 57-5.)

Based on these observations and the duplex's location in a residential neighborhood with small children playing only five feet away from the property, Kinchen believed that the property posed an "imminent threat to the health and safety of nearby families." (DE# 57-4.)  Kinchen says he entered the duplex with a code inspector for the sole purpose of determining whether it needed to be immediately condemned and secured (and not to gather additional evidence against Brown). (*Id.*)  Moreover, Kinchen claims that Brown was *already* in custody before Kinchen decided to search the duplex. (*Id.*)

According to Williams and Goins, they played no role in Brown's arrest or the search and did not even consult with Kinchen that day. (DE# 57-8, 57-8.)  Instead, they claim they were on routine patrol together in the neighborhood, drove up to speak to Cook when they saw a police car parked next to the duplex and never even left their car. (DE# 57-7, 57-8.)  Passmore states in

his affidavit that he never responded to the scene that day and played no part in Brown's arrest.[6]

(DE# 57-6.)

## II.    Standards

### a.  Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted:

> . . . if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

The moving party bears the burden of meeting this standard.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   All evidence considered on motion for summary judgment must be "viewed in a light most favorable to the nonmoving party."  *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994) (citing *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).   A nonmoving party is under no obligation to respond to a motion for summary judgment that is not properly supported with evidence.  *Adickes*, 398 U.S. at 160. This does not mean, however, that a court is "constrained to accept all the nonmovant's factual characterizations and legal arguments."  *Beal*, 20 F.3d at 458-59.   Moreover, a Court cannot "draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective."  *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007).

If the moving party presents a properly supported motion for summary judgment, then the nonmoving party cannot rely on the existence of a mere "scintilla of evidence" to avoid summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  *See also Matsushita Elec.*

---

[6]      According to the police report for this incident, a female officer named "Holmes" was also present that day and took photographs of the purported nuisance conditions.  (DE# 57-9.) However, for reasons unknown, neither Brown nor the Defendants address Holmes' role in the search or arrest.

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986) ("[T]he party opposing summary judgment must do more than simply show that there is some metaphysical doubt as to the material facts");   *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'") (quoting FED. R. CIV. P. 1).  Conclusory allegations and conjecture cannot be the basis for denying summary judgment.  *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996).

"Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial."  *Schechter v. Georgia State Univ.*, 341 F. App'x 560, 562 (11th Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322)).  "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted."  *Beal*, 20 F.3d at 458-59.  In sum:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather it must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

FED. R. CIV. P. 56(e)(2).  *Accord Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

### b.  Qualified Immunity

Public actors performing discretionary functions are protected from liability "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 801 (1982)).  A discretionary function is one that, "*but for* the alleged constitutional infirmity, would have fallen with[in] his legitimate job description."  *Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004) (italics in original).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  To overcome qualified immunity, a plaintiff must demonstrate that the officer's actions violated his constitutional rights and that at the time of the incident, every objectively reasonable officer would have known these actions violated clearly established federal law.  *Garrett v. Athens-Clarke County, Ga.*, 378 F.3d 1274, 1278-79 (11th Cir. 2004).

To be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citations omitted).

### III.   Analysis

Defendants claim that they are entitled to qualified immunity and that the undisputed evidence demonstrates they are entitled to summary judgment on both of Brown's claims.[7] (DE# 57; DE# 65; DE# 70.)  First, Defendants argue that both probable cause and exigent circumstances existed sufficient to justify a warrantless search of the duplex's interior.  Second, Defendants argue that probable cause existed for Brown's arrest.  Because the question of

---

[7]   *See also generally supra* note 5.

whether probable cause existed for Brown's arrest informs the warrantless search analysis, I will address this issue first.

### a. Brown Was Not Falsely Arrested

Defendants argue that the evidence demonstrates that probable cause for Brown's sanitary nuisance arrest is established as a matter of law because not only did Brown plead guilty to that charge in Florida state court (thereby deeming him "convicted" for present purposes), but also the uncontroverted evidence shows Defendants had probable cause to arrest Brown for sanitary nuisance in any event.  (DE# 57, pp. 8, 12.)  In support of this first argument, Defendants attached to their motion a state court judgment showing that on August 18, 2006, Brown pled guilty to "nuisance injurious to health," was adjudged guilty by that court, and ordered to pay a $318.00 fine.  (DE# 57-9, p. 3.)  Because I agree that the uncontroverted, competent evidence shows Brown was convicted on the sanitary nuisance charge, I respectfully recommend that the District Court grant Defendants summary judgment on his false arrest claim.

A false arrest claim under § 1983 arises where a police officer arrests somebody without probable cause or a warrant.  *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010).  "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."  *Id.*  A Court must determine whether the facts known to a police officer at the time of an arrest provided any objective basis for the arrest.  *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

The existence of probable cause is an absolute bar to a false arrest claim.  *Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010); *Von Stein v. Brescher*, 904 F.2d 572, 584 n.19 (11th Cir. 1990); *LeGrand v. Dean*, 564 So. 2d 510, 511 (Fla. 5th DCA 1990).  Under Florida

law, a conviction conclusively establishes the existence of probable cause for that arrest.  *Ware v. United States*, 971 F. Supp. 1442, 1465 (M.D. Fla. 1997) (citing *Padrevita v. City of Lake Worth*, 367 So. 2d 739, 742 (Fla. 4th DCA 1979)).  *See also Shank v. Spruill*, 406 F.2d 756, 757 (5th Cir. 1969) (holding an arrest must be viewed as proper and lawful when followed by a conviction).  Therefore, once the fact of a conviction has been established, a court's probable cause analysis ends.  At that point, a court may simply enter summary judgment for the defendant on the false arrest claim.  *See Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990) ("When the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate").

In his verified response to Defendants' summary judgment motion, Brown claims that he never received a notice ordering him to appear in county court to face the sanitary nuisance charge.  (DE# 66, p. 2.)   Brown also attached a case information printout from the Dade County Clerk's website that lists the disposition of the sanitary nuisance charge as "WH ADJ-SUSP ENT SENT" and states that this indicates the state court withheld adjudication on that charge.[8] (*Id.* at p. 2; DE# 66-1, p. 10.)  Likewise, the docket sheet (DE# 66-1, p. 11) shows that judgment and sentence were imposed on August 18, 2006.  In other words, Brown is arguing that the county judge entered judgment and imposed sentence on a defendant who was not even before her.  Therefore, Brown argues, he was not "convicted" and, as a result, probable cause for his sanitary nuisance arrest is not established as a matter of law.  *See Elliot*, 953 F.2d at 1582.

---

[8]      As will be discussed in greater detail below, the parties disagree as to whether the disposition of the sanitary nuisance charge constitutes a "conviction." However, no party has argued that the documents attached by the other side are not accurate copies of the state court record.  This is likely because the content of these documents is not subject to reasonable dispute.  Images of these documents are available on the Dade County Clerk of Court website, http://www2.miami-dadeclerk.com/CJIS/CaseSearch.aspx, where I was able to confirm their contents.  Consequently, I am taking judicial notice of these documents' authenticity.  FED. R. EVID. 201.

There is no Eleventh Circuit or Florida Supreme Court case precisely on point discussing whether all withholds of adjudication constitute "convictions" for purposes of barring a false arrest claim. However, the Florida Fifth District Court of Appeal decided in *Behm v. Campbell*, 925 So. 2d 1070, 1072 (Fla. 5th DCA 2006), that a no contest plea constituted a conviction under Florida law even though adjudication was withheld and was therefore conclusive evidence of probable cause for an arrest.

In reaching its conclusion, the Fifth District relied upon section 960.291(3), Florida Statutes (2006), which has remained unchanged to the present and defines a conviction as "a guilty verdict by a jury or judge, or a guilty or nolo contendere plea by a defendant, regardless of adjudication of guilt." *See generally Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983) ("A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise").

Given that the statute upon which the Fifth District relied defines as a conviction a withhold of adjudication after a guilty plea, it is apparent that the Fifth District's holding also bars a false arrest claim in that instance as well. *See also Garron v. State*, 528 So. 2d 353, 360 (Fla. 1988) (noting that even when adjudication was withheld, a guilty plea constituted a conviction under a previous version of the state sentencing guidelines statute because it was actual evidence of guilt whereas a nolo plea was not), *abrogated on other grounds by Montgomery v. State*, 897 So. 2d 1282 (Fla. 2005) (holding that a plea of *nolo contendere* constitutes a conviction for purposes of the current sentencing guidelines even where adjudication of guilt is withheld).[9]

---

[9]     *Garron* is instructive because it demonstrates that the Florida Supreme Court views a guilty plea as establishing guilt more so than even a no contest plea, regardless of whether a

I therefore respectfully recommend that the District Court grant summary judgment to Defendants on the merits of Brown's false arrest claim.  It is uncontroverted that Brown's sanitary nuisance charge was resolved by a plea and a withhold of adjudication.  While Brown insists in his verified response that he never pled *guilty,* his version of events (i.e., that he **never appeared in county court to face the sanitary nuisance charge** and by extension did not plead guilty) is so blatantly contradicted by the record that no reasonable jury could believe it.[10]  *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").[11]  Probable cause for his arrest is therefore established as a matter of law.

---

court actually adjudicates guilt.  However, that distinction is not itself determinative here because it involved neither false arrest nor sanitary nuisance and "the term 'conviction' as used in Florida law has been a 'chameleon-like' term that has drawn its meaning from the particular statutory context in which the term is used."  *Raulerson v. Florida*, 763 So. 2d 285, 291 (Fla. 2000).

[10]     It is important to note that Magistrate Judge White previously specifically instructed Brown that the resolution of Defendants' motion may result in entry of summary judgment against him if he did not successfully oppose it.  (DE# 59.)  Therefore, to the extent there is some possibility that additional evidence exists that Brown could have relied on to support his story, I am confident that despite his *pro se* status he has been given more than fair warning of the need to present this evidence and more than ample time (more than eight months) to bring it to this Court's attention.

[11]     In *Scott*, a police officer was sued under § 1983 for excessive force when he forced a fleeing motorist off the road during a high speed chase.  550 U.S. at 375.  The officer moved for summary judgment on qualified immunity grounds and in support attached a video of the incident that clearly demonstrated the fleeing motorist posed a threat to other drivers and pedestrians.  *Id.* at 379-80.  The District Court denied summary judgment to the officer based upon the fleeing motorist's assertions that even though he was in fact fleeing the officer in a high speed chase, he was driving in a manner that did not pose any threat to others.  *Id.* at 379.  The Supreme Court reversed and found the officer was entitled to qualified immunity.  The Supreme Court held that despite a court's obligation to view the evidence in a light most favorable to the non-moving party, there was no allegation that the video of the chase was altered in any way and therefore it was not required to ignore the video and take the fleeing motorist's assertions at face value.  *Id.* at 379-81.

Phrased differently, Brown's allegation that he never appeared in court to enter a plea and be sentenced does not generate a "genuine" factual dispute concerning a material issue because his theory is insufficient to cause a jury to return a verdict in his favor and because the evidence is either "not significantly probative" or "merely colorable" (if that, which is unlikely). *Anderson*, 442 U.S. at 249-250.

In the alternative, I find that Defendants are also entitled to qualified immunity for Brown's arrest because the uncontroverted competent evidence demonstrates that no constitutional violation occurred. *See Bennett v. Parker*, 898 F.2d 1530, 1533-35 (11th Cir. 1990) (defendant prison guard entitled to qualified immunity because there was no genuine material issue of fact as to whether a constitutional violation occurred).

Although the parties disagree about whether Kinchen made comments about wanting to arrest Brown, this factual dispute is not "material" and therefore is insufficient to prevent the entry of summary judgment.  To determine whether a factual dispute is "material," the substantive law applies – and only disputes over facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 442 U.S. at 248.  To view the issue from the opposite side, "factual disputes which are irrelevant or unnecessary will not be counted." *Id.  See also Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d

---

In this case, there is likewise no allegation that the judgment attached to Defendants' motion was altered.  Like the motorist in *Scott*, Brown in effect argues that the Court is required to ignore the clear evidence before it and simply take his word that he did not plead guilty.  Indeed, as I have already explained, it is appropriate to take judicial notice of the judgment.  *Supra* note 7.  This judgment blatantly contradicts Brown's story and therefore the Court is not required to adopt Brown's sworn story to the contrary on summary judgment.  *Accord Beshers v. Harrison*, 495 F.3d 1260, 1262 n.1 (11th Cir. 2007) (relying on *Scott* to grant summary judgment where undisputed documentary evidence contradicted plaintiff's version of the facts in a qualified immunity case).

In addition, even if Brown entered a *nolo contendere* plea to the sanitary nuisance charge (as opposed to a guilty plea), then, pursuant to *Behm*, the plea would *still* be sufficient to demonstrate the existence of a conviction for probable cause purposes.

1558, 1565-66 (11th Cir. 1992) (affirming summary judgment, noting existence of parties' "starkly different understandings" concerning certain factual issues but concluding that there is "no legally significant factual issue to be resolved by the trier of fact" because the agreement at issue is void for failure of consideration under the applicable substantive law).

Therefore, the question here is whether Kinchen's comments (assuming they were made) would invalidate an arrest which was otherwise supported by probable cause. The answer to that question is no. *Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004) (arresting officer's state of mind – other than for the facts he knows – is "irrelevant to the existence of probable cause"). *See also Whren v. United States*, 517 U.S 806, 813-814 (1996) (constitutional reasonableness of a traffic stop does not depend on actual motivations of individual officers because "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"). *See generally Ali v. New Jersey State Police Dept.,* 120 F. App'x 900, 902-03 (3d Cir. 2005) (affirming summary judgment entered in favor of police officers on qualified immunity grounds and concluding that the arrestee's allegations of the officers' alleged improper and discriminatory conduct are irrelevant because "a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated"). *Cf. Hunter v. Clardy*, 558 F.2d 290, 292 (5th Cir. 1977) *(*reversing judgment entered in plaintiff's favor in civil rights lawsuit for alleged false arrest and explaining that "motive is [not] relevant to the offense of false arrest in Georgia" and further noting that, under Georgia law, "once probable cause is established, the arresting officer's collateral bad motive is immaterial since the guilt of the arrestee is determined by a judicial officer, not by the law enforcement officer")

### b. Defendants Are Entitled to Qualified Immunity for the Interior Duplex Search

Defendants argue that they are entitled to summary judgment and/or qualified immunity for their search of the duplex's interior because they had probable cause to believe a nuisance condition existed inside the duplex that posed a threat to the neighbors and this threat constituted an exigent circumstance. Like the arrest discussed above, the decision to search a residence is within a police officer's discretionary authority. *Boozer v. Sarria*, No. 1:09-CV-2102-TWT, 2010 WL 3937164, at *5 (N.D. Ga. Oct. 4, 2010). Moreover, it has been clearly established since well before the search giving rise to this case that the warrantless non-consensual search of a residence is presumptively unconstitutional absent exigent circumstances. *E.g., Payton v. New York*, 445 U.S. 573, 587-88 n.26 (1980) (citing *Agnello v. United States*, 269 U.S. 20, 33 (1925)).

However, as outlined below, the law on whether the suspected existence of a sanitary nuisance within a duplex home closely surrounded by other duplex homes containing families with children constitutes exigent circumstances sufficient to justify the warrantless search of that duplex is not "clearly established." I therefore respectfully recommend that the District Court enter summary judgment finding that the Defendants are entitled to qualified immunity on Brown's illegal search claim.

The Fourth Amendment to the United States Constitution provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.[12]   While the protection the Fourth Amendment provides against government tyranny does not stop when a person leaves their home, "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion" stands at the very core of this protection. *Silverman v. United States*, 365 U.S. 505, 511 (1961). *See also United States v. United States Dist. Court for the E. Dist. of Mich.*, 407 U.S. 297, 313 (1972) (characterizing warrantless physical entry by the government into a home as "evil"); *United States v. Rabinowitz*, 339 U.S. 56, 70 (1950) (Frankfurter, J, dissenting) ("It was the answer of the Revolutionary statesmen to the evils of searches without warrants and searches with warrants unrestricted in scope"). It is this core protection that is at issue here.

"The securing of a warrant is not a mere formality or technicality." *United States v. Bradley*, 922 F.2d 1290, 1295 (6th Cir. 1991) (citing *MacDonald v. United States*, 335 U.S. 451, 455 (1948)). The Supreme Court is very clear that the warrant requirement means an officer's determination that probable cause exists is alone normally insufficient to satisfy the Fourth Amendment. That is to say:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a

---

[12]   The Florida Constitution Article I, § 12 ("Searches and seizures"), which, as noted above, *supra* note 5, provides protection identical to that of the Fourth Amendment, states: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution."

magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

*Johnson v. United States*, 333 U.S. 10, 13 (1948). *Accord United States v. Rohrig*, 98 F.3d 1506, 1514 (6th Cir. 1996). Moreover, the Fourth Amendment is applicable in situations, such as here, involving nuisance conditions. *Michigan v. Tyler*, 436 U.S. 499, 504 (1978).

The Supreme Court has delineated few exceptions to the requirement that a government agent obtain a warrant before entering a private residence. *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002). These exceptions "cover situations where 'the public interest require[s] some flexibility in the application of the general rule that a valid warrant is a prerequisite for a search.'" *Id.* (brackets in original) (quoting *Arkansas v. Sanders*, 442 U.S. 753, 759 (1979)). The specific exception invoked here by Defendants is known as "exigent circumstances." (DE# 57, p. 9.) Exigent circumstances exist "when there is compelling need for official action and no time to secure a warrant." *Tyler*, 436 U.S. at 509. Additionally, where the exigent circumstance involves a crime, there must be probable cause. *E.g., United States v. Santa*, 236 F.3d 662, 668 (11th Cir. 2000).

This exception is traditionally invoked where the situation implicates "danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit." *Holloway*, 290 F.3d at 1334 (citing *Johnson*, 333 U.S. at 14-15). Defendants specifically rely on the "risk of harm to the public" rationale for their decision to search the duplex without a warrant. (DE# 57, p. 10.) I have already concluded and explained

that the officers had probable cause to believe a sanitary nuisance existed *outside* of the home. Given Brown's acknowledgment that the exterior of the home, including the roof, exhibited at least some hurricane damage, I also find it was reasonable for Defendants to conclude that there was probable cause to believe a similar sanitary nuisance situation might have existed *inside* the duplex.   *Devenpeck*, 543 U.S. at 152 (Whether probable cause exists depends upon the reasonable conclusion "to be drawn from the facts known to the arresting officer at the time of the arrest").

But it is not clear, based on the evidence before me, that *this* sanitary nuisance (even if it was established for the interior of the duplex) and an exposed roof are "exigent circumstances" to support a warrantless search of a home.   It is clearly established that to satisfy this particular rationale, the threat posed to the public must be immediate (e.g., to put out a fire).   *Tyler*, 436 U.S. at 504 (holding that firemen may enter a building without a warrant to put out a fire but that the government must obtain a warrant to remain afterward to conduct an arson investigation). *See also Rohrig*, 98 F.3d at 1519 (rejecting reliance on this rationale to justify abating a nuisance because it posed no immediate threat to a neighborhood).   Defendants provided insufficient evidence to explain why, for instance, they could not simply have secured the yard by locking the gate to the fence (thereby preventing or thwarting anyone from entering the house) while they obtained a warrant.

However, it is not necessary to analyze Defendants' explicit justification to conclusion to determine that Defendants are entitled to qualified immunity for their warrantless search.   In order to recommend denying qualified immunity to Defendants, I must be able to determine that at the time of the incident *every* objectively reasonable officer would have known these actions violated *clearly established federal law*.   *Garrett*, 378 F.3d at 1278-79.   I cannot make that

determination because at this juncture at least two federal circuit courts have developed a new rationale for the exigent circumstances exception to the warrant requirement in the nuisance context – and neither the Supreme Court nor the Eleventh Circuit has yet expressed its opinion on this new rationale's constitutional validity. *Rohrig*, 918 F.3d at 1519 (acknowledging that it was fashioning a new rationale to justify a warrantless intrusion into a home).

In *Rohrig*, the Sixth Circuit extended Supreme Court precedent to justify a warrantless search "to restore the neighbors' peaceful enjoyment of their homes and neighborhood" when it approved of the warrantless search of a home to identify and abate the source of loud music in the middle of the night. 918 F.3d at 1506, 1521. The Sixth Circuit reasoned that the Fourth Amendment's focus on "reasonableness" was "flatly at odds with any claim of a fixed and immutable list of established exigencies" and that "such a claim would ignore the case-by-case and fact-specific development of the existing categories." *Id.* at 1519. Similarly, in *Noone v. The City of Ocean City*, 60 F. App'x 904, 910 (3d Cir. 2003), the Third Circuit relied on *Rohrig* in upholding the warrantless search of a home by police officers who believed they observed underage drinking and violation of a noise ordinance.

Although Defendants have not explicitly relied on the new type of exigent circumstance identified in these specific cases to justify their warrantless search argument, the clear import of Defendants' filings is it that they searched the home out of a concern that it posed a threat to the neighbors' enjoyment of their neighborhood and to the general public safety and welfare of the immediate community. Brown has not disputed Defendants' assertion that the duplex "is located in a residential neighborhood and it is bordered on both sides by other duplexes occupied by families and small children." (DE# 57, p. 2.) Defendants' concern that the duplex's condition may deprive those living in the neighborhood of their peaceful enjoyment of the neighborhood is

most evidenced by the fact Kinchen believed it was necessary not only to instruct two small children playing nearby to go home, but also to instruct their "mother that the area was unsafe for their play." (DE# 57-4, p. 2.)  It therefore appears that these concerns may justify a warrantless search under the Sixth and Third Circuit's approach and an objectively reasonable police officer may have believed the duplex search was legal.

In recommending that Defendants be granted qualified immunity, I am not opining that I believe their decision unequivocally and necessarily comported with the Fourth Amendment protection to which Brown was entitled.  Should the Eleventh Circuit or Supreme Court eventually consider this specific issue, it is entirely possible they will disagree with the Sixth and Third Circuits and reject the developing theory that the Supreme Court's prior opinions can be extended to find that exigent circumstances exist, in effect, when the neighbors' ability to peacefully enjoy the neighborhood is compromised.  *Cf. Parrish v. Nikolits*, 86 F.3d 1088, 1094 (11th Cir. 1996) (noting that a circuit split or other difference of opinion in the lower courts as to what a Supreme Court case or legal doctrine means supports the granting of qualified immunity) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 533-36 (1985)).

To be sure, it is usually the better practice for the government to obtain a warrant before invading the privacy of the home.  *Cf. United States Dist. Court for the E. Dist. of Mich.*, 407 U.S. at 313 (characterizing warrantless physical entry by the government into a home as "evil").  Framed by this truism, I am concluding only that, (1) in light of the fact that more than one federal circuit court has upheld such searches for similar purposes in similar situations, (2) the lack of any binding precedent from a controlling court, and (3) the Sixth Circuit's well-taken point that the concept of "reasonableness" is key to any Fourth Amendment analysis, I cannot

say that every objectively reasonable officer would have known the warrantless search in this case violated the Fourth Amendment.

Because I am recommending that the District Court grant Defendants qualified immunity on Brown's illegal search claim, it is not necessary for me to analyze and conclusively determine the validity of Defendants' further alternative argument that Brown lacks standing to challenge the search.[13]

### IV.    Conclusions

Because the uncontroverted, competent evidence demonstrates that Defendants had probable cause to arrest Brown for maintaining a sanitary nuisance, I respectfully recommend that the District Court grant Defendants summary judgment on the merits of that claim or, in the alternative, grant Defendants qualified immunity because there is no evidence a constitutional violation occurred. Moreover, I also respectfully recommend the District Court grant Defendants qualified immunity for their warrantless search of the duplex, because I am unable to conclude

---

[13]    However, if the District Court believes that this determination is necessary, then I respectfully recommend that it find Brown *does* have standing to challenge the search.

"The party alleging an unconstitutional search must establish both a subjective and an objective expectation of privacy." *United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006). Despite his extended absence from the duplex caused by his jail stay, Brown believed the duplex was his home and therefore had a subjective expectation of privacy. Defendants essentially argue, however, that Brown's extended absence while incarcerated means that he had no objectively reasonable expectation of privacy. I do not find that argument persuasive. Defendants acknowledge that Brown lived at the duplex before jail and he clearly did not choose to stay away from the duplex while in jail. Quite literally, it was impossible for Brown to go back to what he considered his home during that time. Moreover, there is no indication Brown had any other place that could be considered his home on July 28, 2006.

Defendants make no argument that he lived at his mother's house, only that he temporarily and initially stayed with her for two days after being released from jail. It is undisputed that somebody from his family owned the duplex, that he had lived there before being sent to jail and that he was cleaning up storm damage at the property after being released from jail. These facts demonstrate that Brown reasonably viewed the duplex as his home. *See United States v. Noriega*, No. 09-00240-KD, 2010 WL 348350, at 3 (S.D. Ala. Jan. 22, 2010) (considering intent to return in search challenge standing analysis).

that every objectively reasonable officer would have known at the time of the search that it violated clearly established federal law.

### V.        Objections

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendations to serve and file written objections, if any, with the District Court.   Each party may file a response to the other party's objection within seven (7) days of receiving the other party's objections.   Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.   *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988), *cert. denied,* 488 U.S. 958).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, this 9th day of February, 2011.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:

The Honorable Patricia A. Seitz

Eldrick Brown, *pro se*

All counsel of record